**C. L. McMAHON, Jr., Plaintiff,**

**v.**

**R. Paul WEESNER, Defendant.**

**No. 65–68–Civ.**

United States District Court
S. D. Florida.
May 13, 1966.

Melvin T. Boyd, of Blackwell, Walker & Gray, Miami, Fla., for plaintiff.

Joseph A. Perkins, of Marchant, Perkins & Cook, Miami, Fla., for defendant.

MEHRTENS, District Judge.

This is an action for contribution between co-makers on nine promissory notes. Jurisdiction is based on diversity of citizenship between the parties. Title 28 U.S.C. § 1332. The plaintiff was held liable for the full value of the notes in the United States District Court for the Northern District of Oklahoma. Caribbean Mills, Inc. v. McMahon, 217 F.Supp. 639 (N.D.Okla.1963), aff'd, 332 F.2d 641 (10 Cir. 1964). Plaintiff now sues defendant as co-maker, asking for contribution for one half the judgment, fees and costs awarded in the Oklahoma suit plus one half of plaintiff's attorney fees and costs in defending and appealing the Oklahoma suit. Defendant admits being a co-maker on the notes but denies liability by raising the affirmative defenses of failure of consideration and estoppel.

This action having been heard at a trial on the merits before the Court without a jury, the Court, having considered the pleadings, the stipulation of counsel, the evidence, the arguments and briefs, makes the following findings of fact and reaches the following conclusions of law.

## FINDINGS OF FACT

1. The plaintiff, C. L. McMahon, Jr., is a citizen of the State of Oklahoma, and the defendant, R. Paul Weesner, is a citizen of the State of Florida.

2. In 1960 the parties became partners in a venture to operate a certain gambling casino in Port au Prince, Republic of Haiti. To operate the casino it was necessary to purchase franchise rights from the Government of Haiti. The agreed price of the franchise was $250,000.00, $145,000.00 of which was paid in cash, the remainder by ten promissory notes in the total sum of $105,000.00. The first of the notes was paid, the remaining nine are the subject of this suit.

3. On or about April 30, 1960, plaintiff and defendant signed the notes as co-makers; Jean F. Laham was made the payee, and the place of payment was the Florida National Bank, at Miami, Florida. It was understood by all that Laham was the proper representative of the Haitian Government, and the notes constituted part payment for the purchase of the casino franchise.

4. Subsequently plans for the casino were terminated and the parties abandoned all operations covering the casino. About this time Laham negotiated the notes to Caribbean Mills, Inc., a Haitian corporation.

5. The record shows that there were negotiations between the parties prior to the signing of the notes. McMahon testified that he, Weesner and Laham had extensive negotiations concerning this business venture, and about the financing and operation. He further testified that he knew the notes were part of a "deal" and were to be given to the Haitian Government. Laham and Weesner testified positively that all parties, including McMahon, agreed that the notes were not to be negotiated and should be paid out of the casino profits. The alleged reason was for protection from the police and the Government. Although there is some conflict in the evidence, the Court finds that it was agreed by all that the notes should not be discounted, but should be held only by Laham or the Haitian Government. This agreement and understanding that only the Haitian Government would hold the notes constituted a conditional delivery, binding as to these parties.

6. On or about May 17, 1960, McMahon wrote a letter to Caribbean Mills, Inc., acknowledging liability and confirming the discounting of the notes to Caribbean, and stating that the notes would be paid at Caribbean's office in Dallas, Texas. Weesner's signature does not appear on this letter. The notes were then en-

dorsed to Caribbean Mills, Inc., and the Oklahoma court subsequently determined it to be a holder in due course.

7. It is uncontradicted in the record that Weesner knew the notes were in the process of being discounted. He testified that Laham had spoken to him about the matter. McMahon testified that he, Weesner, Laham, and a Mr. Haas, President of Caribbean Mills, Inc. met on May 15, 1960 in the Riviera Hotel in Port au Prince, Haiti, to discuss the notes, and all agreed to the negotiation and discount to Caribbean. Weesner said he could not recall the meeting; however, upon referring to his diary he recalled that he was in the Riviera Hotel in Haiti on May 15, 1960. Laham also claimed to have a faulty memory but his deposition stated that the four men did meet in the Riviera Hotel to discuss the negotiation of the notes to Caribbean Mills. McMahon's testimony further correlates with Laham's, in that both testified the meeting took place in the garden and Laham was temporarily excused.

8. Even if it could be construed that Weesner did not consent to the negotiation prior to the time when the notes were discounted, there is positive evidence that he later agreed to it, and acknowledged his liability to Caribbean Mills, Inc. In a letter to McMahon, dated March 21, 1961, Weesner acknowledged his liability on the notes in possession of Caribbean Mills, Inc. and mentioned his attempts to liquidate them. In this letter he further refers to telephone conversations between McMahon and himself relating to their problems in Haiti. McMahon testified that after the notes had been assigned to Caribbean Mills, Inc. he and Weesner had several telephone calls discussing the notes and the business problems of the Riviera Hotel in Haiti generally. Depite the weak and conflicting testimony, the Court is of the opinion and finds that a preponderance of the credible evidence shows that Weesner consented to the terms of McMahon's letter of May 17, 1960, to Caribbean Mills.

9. Later the nine unpaid notes became in default and in January 1962 suit was instituted by the holder of the notes, Caribbean Mills, Inc., against McMahon. Caribbean obtained a final judgment plus interest in the sum of $129,-324.38. In addition, plaintiff incurred costs, attorneys fees and expenses in the sum of $16,932.88. The entire amount of the judgment, costs and fees was paid by McMahon.

10. Upon the initiation of the Oklahoma suit, and again upon satisfaction of judgment, demand was made by McMahon against Weesner as co-maker to join in the defense of the suit and to contribute one half the amount of the judgment, fees and costs. Weesner refused to join in the defense or contribute his proportionate share.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties.

2. In Caribbean Mills, Inc. v. McMahon, 217 F.Supp. 639 (N.D.Okla.1963), it was decided that:

(a) The law of Haiti was to apply and thus the fact that gambling is illegal in Oklahoma (or Florida) is no bar to the suit.

(b) Caribbean Mills, Inc. is a holder in due course.

(c) As negotiable notes, these nine notes are intrinsically valid.

This Court considers that decision conclusive of these questions.

3. In a suit for contribution the defendant may raise defenses which are *personal* to him. Phillips-Jones Corp. v. Parmley, 302 U.S. 233, 58 S.Ct. 197, 82 L.Ed. 221 (1937). Therefore, defendant's defense of failure of consideration for the notes is not a proper defense to this suit. However, the defendant has properly raised the affirmative defense that the plaintiff's conduct following execution of the notes was of such a nature as to estop him from obtaining contribution. Restatement, Restitution § 81 (1937). The alleged im-

proper action consisted of the plaintiff unilaterally agreeing to the discounting of the notes and changing the place of payment.

■ 4. As a general rule, parol evidence may not be used to alter the terms of a promissory note as against a holder in due course. Parol evidence, however, may be used to show a conditional delivery as between the parties or co-makers. Cockrell v. Taylor, 122 Fla. 798, 165 So. 887, 105 A.L.R. 1338 (1936). Although, as pointed out, the evidence is in conflict, the Court finds that a conditional delivery was made, in that these notes were not to be negotiated but were to remain with Laham or the Haitian Government.

■ 5. If both co-makers agree that the notes shall be discounted, then they have waived that defense, which they might have had, to contribution liability. See Matthews v. Warner, 145 U.S. 475, 12 S.Ct. 945, 36 L.Ed. 782 (1892); Schaeffer v. Coldren, 237 Pa. 77, 85 A. 98 (1914). The Court has found that defendant consented to the discounting of the notes to Caribbean Mills, Inc.; therefore, defendant has waived that defense to contribution liability.

■■ 6. Since it is an affirmative defense, the burden of proof is upon the defendant to show that there was no consent to the change in the place of payment. No evidence was offered by the defendant on this point. Furthermore, the Court has found that the totality of the evidence shows that Weesner consented to the entire letter of May 17, 1960, to Caribbean signed by McMahon. It is permissible for the co-makers of a note to have a subsequent agreement, even though different in form from the original notes, which is not inconsistent with the liability for contribution. See Flickinger v. Prince, 165 Iowa 570, 146 N.W. 738 (1914).

■ 7. Plaintiff asks for $64,662.19, which is one half the satisfaction of the judgment in Caribbean Mills, Inc. v. McMahon, 217 F.Supp. 639 (N.D.Okla. 1963). Defendant is liable to plaintiff for this amount.

■ 8. In addition to the foregoing, plaintiff also seeks to recover one half of $16,932.88 paid by him as legal expenses and costs (not included in the judgment) incurred in defending the first suit against him. The law on this point found by the Court is meager and conflicting. Compare 18 Am.Jur.2d, Contribution § 18 (1965), with Restatement, Restitution § 85 (1937). The generally accepted rule is that attorney fees are allowable only by contract or statute; neither of which is present in this case. While the Court realizes that that rule usually applies in the context of an instant suit, it would also seem logical to apply the rule in a suit for contribution in the absence of a strong showing by the plaintiff as to why he should be reimbursed. Since Weesner was not a party and expressly refused to participate in the defense of the Oklahoma suit, and McMahon has not shown to the Court why he should be reimbursed for those attorney fees, the Court holds that the equities in this case favor a disallowance of plaintiff's legal expenses.[1]

9. Counsel for the parties shall submit an order in accordance with this finding within fifteen days.

1. This view is consistent with Knight v. Hughes, 3 Car. & P. 467 (Eng.1828); John v. Jones, 16 Ala. 454 (1849); Newcomb v. Gibson, 127 Mass. 396 (1879).